# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0191V

| | |
|---|---|
| ROBIN WABBE,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: November 3, 2023 |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On January 7, 2021, Robin Wabbe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on January 23, 2020. Amended Petition at 1, ¶¶ 2, 10, 15. As explained in an accompanying affidavit from Petitioner's counsel, the Petition was filed without medical

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner also filed an amended petition with additional detail and medical records citations on July 19, 2021. ECF No. 10.

records, due to concerns about preserving the claim due to the then-anticipated removal of SIRVA from the Vaccine Injury Table.[4]

After determining that Petitioner had failed to provide sufficient evidence to support her claim - specifically in support of the six-month severity requirement - I allowed her the opportunity to correct the noted deficiency or to otherwise show cause why her claim should not be dismissed. ECF No. 21; *see* Section 11(c)(1)(D)(i) (severity requirement). On February 22, 2023, Petitioner subsequently filed a motion requesting that I dismiss her claim (ECF No. 22), and I granted the motion (ECF No. 23).

On June 9, 2023, Petitioner filed a request for an award of $6,997.50 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs, ECF No. 27. Petitioner did not address the statutory requirements of good faith and reasonable basis, prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1).

On June 23, 2023, Respondent filed a response, deferring to my discretion regarding "whether the statutory requirements for an award of fees and costs have been met in this case, particularly whether there is a reasonable basis for the claim." Respondent's Response to Petitioner's Motion for Fees and Costs at 2, ECF No. 28. Petitioner did not file a reply.

For the reasons discussed below, Petitioner has failed to establish there was a reasonable basis for her claim. Thus, she is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I.     Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in*

---

[4] Petitioner's counsel specifically stated that she was in the process of obtaining Petitioner's medical records and filed the Petition without records "[d]ue to the potential Table amendment proposed by [R]espondent which would divest victims of shoulder injuries related to vaccine administration (SIRVA) the benefit of a 'Table' claim." Exhibit 1. On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

2

1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[5] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must

---

[5] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.     Medical Records

During the two years prior to vaccination, Petitioner suffered from bilateral hip pain and right-hand finger pain on several occasions. Exhibit 8 at 7, 13, 15, 32. She first complained of left shoulder pain two weeks post-vaccination – on February 12, 2020. *Id.* at 6. Attributing her pain to the flu vaccine she received, Petitioner described it as tight and aching. She was prescribed Meloxicam – an NSAID[6] medication, to combat her pain. *Id.*

More than five months later, on July 29, 2020, Petitioner returned to her PCP, complaining of sharp and moderate pain in his left shoulder and right ankle after following a fall at 4AM when on the way to the bathroom. Exhibit 8 at 5. Her primary care provider ("PCP") ordered x-rays and diagnosed Petitioner with right ankle and left shoulder strain, as well as mild tendinitis of the left shoulder. *Id.* There is no mention of Petitioner's flu vaccine or earlier left shoulder pain in this medical record.

On August 17, 2020, Petitioner visited an orthopedist – following self-referral, complaining of left shoulder pain which she attributed to the flu vaccine she received.[7] Exhibit 5 at 12. She stated that "she developed pain for one month and then it went away

---

[6] NSAID stands for non-steroid anti-inflammatory drug. MEDICAL ABBREVIATIONS at 422 (16th ed. 2020).

[7] When providing this history, Petitioner mistakenly reported that she received the flu vaccine in February, rather than late January 2020. *Compare* Exhibit 5 at 12 *with* Exhibit 3 (vaccine record).

and has come back." *Id.* Petitioner described her current pain as lateral arm pain radiating into her back and under her arm, accompanied by muscle spasms in her arm, occasional numbness in her fingers, and "pain with motion in her neck." *Id.* There is no mention of her fall and pain from three weeks earlier. The orthopedist diagnosed Petitioner with left shoulder bursitis and tendonitis, administered a steroid injection, and prescribed physical therapy ("PT"). *Id.* at 13-14; *see* Exhibit 4 (PT records).

When Petitioner returned to the orthopedist on October 29, 2020, she reported no relief from the steroid injection she received and described pain in "the posterior aspect of the arm just behind the shoulder and down the back of the arm towards the elbow," as well as pain at the base of her neck and in the periscapular region. Exhibit 5 at 9. Petitioner was diagnosed with "[m]ild rotator cuff tendonitis [and] [m]ild cervical spondylosis with some concern over left side radiculopathy." *Id.* at 10.

### III. Analysis

#### A. Reasonable Basis

By Petitioner's own admission, the aching left shoulder pain she experienced post-vaccination resolved within one month without treatment (other than NSAIDs to control her pain). When she sought treatment for left shoulder and right ankle pain approximately five months later, in July 2020, she attributed her symptoms to a fall suffered early that morning. And there is substantial evidence showing Petitioner's later left shoulder pain in the second half of 2020, differed in type (radiating) and location (also in her back and neck) than the tight ache she described in February 2020. *Compare,* Exhibit 8 at 6 *with id.* at 5; Exhibit 5 at 12; Exhibit 6 at 6, 12-13. Even lacking the information regarding her July 2020 fall, the orthopedist did not link Petitioner's later pain to her earlier vaccination and opined that at least some of the pain was due to possible left-sided radiculopathy.

The record contains *no* evidence linking Petitioner's later left shoulder pain to her vaccination, other than her personal belief that the events were connected – expressed several months before the petition was filed and months after contacting Petitioner's counsel. *See* Petition, filed Jan. 7, 2021; ECF 27 at 6 (billing records showing contact with Petitioner's counsel's law firm throughout 2020). Rather, the record reveals that the pain Petitioner experienced post-vaccination resolved within one month without treatment (such as a steroid injection) which would explain a temporary cessation of her pain. And there are several more likely alternative causes for her later symptoms, the July fall and possible cervical radiculopathy.

This lack of supporting evidence of sequelae lasting more than six months post-vaccination renders the claim untenable from the outset. Petitioner has noted that this

5

case was filed on January 7, 2021, without medical records, "[d]ue to the potential Table amendment proposed by [R]espondent which would divest victims of shoulder injuries related to vaccine administration (SIRVA) the benefit of a 'Table' claim." (Exhibit 1 at ¶ 1) Such caution on the part of Petitioner's counsel, although understandable, does not provide reasonable basis, which would otherwise not exist, for the claim's filing. *See Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017). And this is not a case in which the development of a fact, ascertained out of ambiguous records, *later* reveals fatal deficiencies that beforehand were not evident. Instead, the later-obtained medical records only *further undercut* Petitioner's claim of an ongoing injury attributable to the flu vaccine she received.

As a result - and despite Petitioner's reasonable desire to file this claim in advance of an anticipated change in the law – I cannot find even a scintilla of evidence would have supported Petitioner's claim. In such circumstances, the Act places the risk of filing the claim on counsel, and does not allow an award of fees.

### B.     Good Faith

In her amended petition, Ms. Wabbe indicated that following her February 2020 visit, she did not return for further treatment until approximately six months later – on August 17th when seen by her orthopedist. Amended Petition at ¶ 5. She failed to mention the visit to her PCP for a fall and left shoulder and right ankle pain she on July 29, 2020, *in either her amended petition or affidavit. See* Amended Petition, filed July 19, 2021, ECF No. 10; Exhibit 2, filed Dec. 16, 2021, ECF No. 16-1. Nor did she address her August 2020 statement that her earlier left shoulder pain had resolved within a month of vaccination or the neurologic nature of her later pain.

It is Petitioner's responsibility to continue to assess the merits of her claim as new information and evidence is brought to light. *See Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (noting that even in cases which initially possessed the requisite good faith and reasonable basis for the filing, these required characteristics may cease to exist as further evidence is presented). Thus, the failure to mention these additional matters, in documents filed after her medical records were obtained, suggests that good faith may be lacking as well. However, given my finding that the claim lacked a reasonable basis, I need not further address the good faith requirement.

### IV.    Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in

good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

                                              **s/Brian H. Corcoran**
                                              Brian H. Corcoran
                                              Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.